```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
```

ADAMS OUTDOOR ADVERTISING LIMITED
PARTNERSHIP,

                     Plaintiff,                     OPINION & ORDER

    v.

                                                       17-cv-576-jdp

CITY OF MADISON and MATTHEW TUCKER,

                     Defendants.

---

Plaintiff Adams Outdoor Advertising Limited Partnership is in the billboard business. It has filed suit against defendants the City of Madison and the city's zoning administrator, Matthew Tucker, challenging the constitutionality of the city's sign-control ordinance. Dkt. 17.

Several discovery-related motions are before the court. I'll cut through the extensive briefing and state the issue in the most general terms: Adams seeks extensive information about defendants' purposes in enacting the sign ordinance. Defendants resist many of Adams's requests on the grounds that the motivations of individual legislators are privileged and irrelevant, and that Adams's requests are unduly burdensome in light of the value of the discovery to the needs of this case.

I'm skeptical of defendants' assertion of legislative privilege. Generally, legislative bodies in Wisconsin are supposed to do their work in the open. I accept that a qualified privilege might protect the most private deliberations of lawmakers, but that privilege would have to yield to the legitimate needs of a litigant to acquire relevant information in a case like this. But I am persuaded that the information Adams seeks is largely irrelevant, and its requests are definitely not proportional to the needs of the case. So for the most part, I am ruling for defendants.

BACKGROUND

The city of Madison adopted the sign-control ordinance in 1977. The ordinance has been revised several times since then, most recently in December 2017. The ordinance prohibits new, relocated, or replacement advertising signs, and it subjects existing advertising signs to strict regulations. *See* Madison, Wis., Ordinances § 31.11. In its current version, the ordinance defines an "advertising sign" as a "sign containing a commercial message directing attention to a business, commodity, service, or entertainment, not related to the premises at which the sign is located, or directing attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than on the premises where the sign is located." § 31.03(2). It explains that its regulations are meant "to further the goals of safety and aesthetics" and lists seven specific purposes. § 31.02(1).

Adams brings facial and as-applied challenges to the ordinance under the First and Fourteenth Amendments. It alleges that the ordinance bans all new advertising signs within the city and severely restricts existing advertising signs without imposing similar restrictions on signs with noncommercial content, and that it does so in a manner not narrowly tailored to advance a compelling governmental interest. For its as-applied claim, it alleges that Tucker's denials of Adams's applications for permits under the ordinance violate Adams's rights under the First and Fourteenth Amendments.

**Discovery Motion 1.** On May 31, 2018, Adams moved to compel defendants to produce the following information:

- The city's Common Council members, alders, employees, and attorneys involved in drafting or adopting any of the provisions of the sign-control ordinance and a description of each individual's role

- A description of the governmental interests that the city claims are served by the ordinance, documents related to those interests, and correspondence between any Common Council member, alder, or city employee related to those interests

- "Studies, data, and reports in the city's possession related to traffic accidents in the city within the last twenty years"

- "Studies, data and reports related to signs and their potential impact on safety and/or aesthetics"

Dkt. 29, at 4. Defendants indicate that they have directed Adams to websites where much of this information is publicly available—video recordings of recent Common Council meetings, meeting minutes, and records about the ordinance's sponsors, procedural history, and voting results. They have also produced a memo describing the ordinance's history and an expert report identifying studies about billboards and traffic safety. (They have searched for other studies in their possession, but they have not found any.) And they have identified city officials with knowledge of the "legislative process." Dkt. 32, at 6. They contend that anything more is protected by the legislative privilege, irrelevant, and not proportional to the needs of the case.

**Discovery Motion 2.** On June 6, Adams deposed Timothy Parks, an employee of the city's Department of Planning and Community and Economic Development. During the deposition, Adams asked Parks about internal discussions he may have had with other city officials concerning the ordinance. Defendants' counsel advised Parks not to answer, citing legislative privilege. The parties called upon Magistrate Judge Stephen Crocker to resolve the dispute; the magistrate ordered briefing on defendants' assertion of the legislative privilege. Dkt. 30.

**Discovery Motion 3.** On June 17, defendants filed a motion for a protective order concerning Adams's Rule 30(b)(6) deposition notice, again contending that much of the

information Adams seeks is protected by the legislative privilege, irrelevant, and not proportional to the needs of the case. Dkt. 41. They also contend that the notice fails to designate several topics with reasonable particularity. The topics listed in the notice include

- The city employees "involved in drafting or adopting the ordinance"
- Defendants' "understanding, interpretation, and application of" several provisions of the ordinance
- "The interests defendants seek or at any time have sought to protect with the ordinance, and all communications, facts, and data underlying or related to those interests"
- "All studies, reports, analysis or similar documents that defendants relied on in drafting and adopting the ordinance"

Dkt. 42-1, at 6–7.

**Discovery Motion 4.** Finally, on June 27, defendants filed a motion to quash Adams's deposition of Paul Soglin, the Madison mayor. Dkt. 50. Again, they contend that much of the information Adams seeks is protected by the legislative privilege and irrelevant to Adams's claims. They also contend that Adams is not entitled to depose Soglin, a high-ranking government official, at all.

Dispositive motions are due July 9.

ANALYSIS

Under Federal Rule of Civil Procedure 26, Adams "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

The parties dispute which standard of review applies to Adams's claims. Defendants argue that *Central Hudson*'s intermediate-scrutiny standard applies because the speech at issue is commercial. *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980). Adams argues that *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), overrules *Central Hudson*. It also argues that even if *Central Hudson* remains good law, *Reed* applies to the facts of this case. *Reed* announced a simple test for outdoor sign regulations: if the regulation is content-based, that is, if it "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter," it is subject to strict scrutiny. *Id.* at 2230. The regulation will survive strict scrutiny only if the government proves that it is "narrowly tailored to serve compelling state interests." *Id.* at 2226.

At this point, the court need not decide which standard of review applies to Adams's claims, because Adams has not established that the information it seeks would be relevant even under *Reed*'s strict-scrutiny analysis. The Supreme Court and the Court of Appeals for the Seventh Circuit have repeatedly explained that legislators' personal motivations for enacting a regulation are irrelevant to First Amendment challenges to government regulations; only the government's *asserted* justifications are pertinent.[1] Thus, at least one district court within the

---

[1] *See, e.g.*, *McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 862 (2005) ("The eyes that look to purpose belong to an 'objective observer,' one who takes account of the traditional external signs that show up in the 'text, legislative history, and implementation of the statute' or comparable official act." (quoting *Santa Fe Ind. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000))); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 558 (1993) (Scalia, J., concurring in part and concurring in the judgment) ("The First Amendment does not refer to the purposes for which legislators enact laws, but to the effects of the laws enacted . . . . This does not put us into the business of invalidating laws by reason of the evil motives of their authors."); *United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 652 n.10 (7th Cir. 2013) ("When ruling a statute unconstitutional, 'the stakes are sufficiently high . . . to eschew the guesswork' inherent in judicial scrutiny of legislators'

Seventh Circuit has barred a plaintiff from inquiring into legislators' personal motivations or "subjective intent." *Metro Pony, LLC v. City of Metropolis*, No. 11-cv-114, 2011 WL 2729153, at *2–3 (S.D. Ill. July 13, 2011). And more specifically, under both *Central Hudson* and *Reed*, the court's analysis focuses on the governmental interests *asserted* by defendants. The burden is on defendants to identify the interests advanced by the regulation and establish that those interests meet the applicable level of scrutiny. Thus, Adams need not adduce evidence of an improper motive. *See Reed*, 135 S. Ct. at 2228 ("[A] party opposing the government 'need adduce "no evidence of an improper censorial motive."'" (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991))).

Adams points to no case, under any standard of review, in which a court considered justifications or motivations for the regulation that were not publicly advanced by the government but rather dredged up by the plaintiff. It comes close with *R.V.S., L.L.C. v. City of Rockford*, in which the Court of Appeals for the Seventh Circuit noted that the First Amendment intermediate-scrutiny analysis for regulations of adult entertainment establishments "is best conceived of as an inquiry into the purpose behind an ordinance rather than an evaluation of the ordinance's form." 361 F.3d 402, 407 (2004). But in that case, the Court of Appeals focused on the motivations publicly asserted by the government. *See id.* at 409–10. The court

---

statements." (quoting *O'Brien*, 391 U.S. at 384)); *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir. 1999) ("The actual motives of those who enacted the ordinance are irrelevant to [the court's] First Amendment analysis."). Adams focuses on its First Amendment claims when arguing relevance, so the court will do the same, but it's worth noting that the Supreme Court has made the same observation about Fourteenth Amendment challenges. *See Palmer v. Thompson*, 403 U.S. 217, 225 (1971) ("[T]here is an element of futility in a judicial attempt to invalidate a law because of the bad motives of its supporters. If the law is struck down for this reason, rather than because of its facial content or effect, it would presumably be valid as soon as the legislature or relevant governing body repassed it for different reasons.").

6

noted that one legislator's testimony suggested an impermissible motivation for the regulation, but it did not change its analysis in light of that testimony because "what motivates one legislator to support a statute is not necessarily what motivates others to enact it." *Id.* at 410. So *R.V.S.* only supports this court's conclusion that its inquiry will focus on defendants' asserted justifications for the sign-control ordinance, not the type of hidden justifications or personal motivations that Adams seeks.

That isn't to say that all evidence concerning the ordinance's justification is irrelevant. "A statement of legislative purpose contained in a preamble or other uncodified provision, or contained in a conference or committee report could likely provide significant evidence of the legislature's discriminatory motive." *Wis. Educ. Ass'n Council*, 705 F.3d at 652 n.10. But statements of individual legislators would not be relevant. *Id.* Likewise, a study that undermined defendants' asserted justifications would be relevant to the analysis. But it simply wouldn't matter whether defendants were aware of or considered that study when drafting, enacting, revising, or implementing the ordinance. Once a municipality adduces evidence supporting its asserted justification, the burden shifts to the plaintiff to "cast direct doubt on this rationale" by demonstrating that the municipality's evidence doesn't support the justification or "by furnishing evidence that disputes the municipality's factual findings." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438–39 (2002) (O'Connor, J., plurality opinion).[2] The plaintiff need not show that the municipality was aware of the evidence that undermined that government's proffered legislative purpose.

---

[2] *See also DiMa Corp.*, 185 F.3d at 829–30 ("[A] municipality may make a record for summary judgment or at trial with evidence that it may not have had when it enacted its ordinance."). Justice Scalia expressed a similar idea when he explained, this time in the context of a free-exercise challenge, that the First Amendment would not be violated if the legislature "set out resolutely to suppress" religious practices "but ineptly adopted ordinances that failed to do so";

7

Defendants also invoke legislative privilege, which protects "documents and testimony reflecting the actual deliberations and motivations of legislators in enacting legislation," 3 Mark S. Brodin et al., *Weinstein's Federal Evidence*, § 501.04[5] (2d ed. 2018), and is meant to allow decision-makers to engage in candid discussions and internal debates without fear of embarrassment or criticism, and therefore to safeguard the quality of the final decision. *See* 2 Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence* § 7.7.1 (3d ed. 2017). The Supreme Court has endorsed this view: "[J]udicial inquiries into legislative or executive motivation represent a substantial intrusion into the working of other branches of government. Placing a decisionmaker on the stand is therefore 'usually to be avoided.'" *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)).

But I need not decide whether legislative privilege applies here. This is a case in which legislative privilege is eclipsed by the relevance requirement of Rule 26. As one scholar explains, "If the court's analysis is limited to matters of public record and extrinsic evidence of legislative motivation is inadmissible, information about the decision-makers' private deliberations would not even be reasonably calculated to lead to the discovery of admissible evidence." *Id.* § 7.7. That's the case here. Adams might be able to overcome the legislative privilege with a showing of sufficient need. But one of the factors to consider in deciding whether the privilege is

---

likewise, a regulation that "in fact singles out a religious practice for special burdens" would violate the First Amendment even if the legislature's motivation was "pure-hearted." *Church of the Lukumi Babalu Aye*, 508 U.S. at 558–59 (Scalia, J., concurring in part and concurring in the judgment). This was the one point on which Justice Scalia disagreed with Justice Kennedy, who wrote the lead opinion. Kennedy would have deemed evidence relevant to a free-exercise challenge to include legislative history—that is, public statements about the legislature's motivation for the regulation. *Id.* at 540. But none of his fellow justices joined him in that conclusion.

overcome is the relevance of the evidence. *See Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-cv-5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011). Here, that factor is dispositive: Adams does not need evidence concerning any private deliberations that might conceivably be covered by legislative privilege.

The bottom line is that under either *Central Hudson* or *Reed*, the analysis will focus on the city's asserted justifications for the ordinance, so Adams is not entitled to obtain discovery beyond those bounds. The city must disclose the justifications it has publicly asserted in support of the ordinance and the publicly available documents (e.g., articles, studies, or data) in its possession concerning those justifications; it must also disclose the justifications and evidence that it will rely on at summary judgment or trial in this case—that is, those justifications and evidence that it intends to introduce into the public record to defend Adams's claims.[3] Adams is not entitled to discovery concerning the individuals who participated in drafting, enacting, revising, or implementing the ordinance; nor may it obtain private communications concerning the ordinance or its justifications. Adams's deposition examinations must stay within the same bounds of relevance and proportionality.

---

[3] Adams's request for data "related to traffic accidents," Dkt. 29, at 4, would fall within this category because it is public data and it concerns a publicly asserted justification for the ordinance—traffic safety. But when deciding whether to order production of discovery, the court must weigh the "burden or expense" against the "likely benefit" of the proposed discovery. Fed. R. Civ. P. 26(b)(1). Here, the burden of producing decades of traffic accident reports, many of which are in paper form, *see* Dkt. 32, at 11, is outweighed by the low probative value of these reports. But in its surreply (which the court will grant it leave to file), Adams notes that a former city employee recently explained that, at least in recent years, the city compiles and summarizes electronic "crash reports" on an annual basis. Dkt. 49-1, at 5. The burden of producing those summaries appears to be low, so the court will order defendants to provide them to Adams.

Contrary to defendants' assertion, justifications for prior versions of the ordinance are still relevant to Adams's claims: Adams seeks damages, so its claims concerning prior versions are not moot, *see Zessar v. Keith*, 536 F.3d 788, at 793 (7th Cir. 2008), and regardless, the city's asserted justification for a prior version of the ordinance would be relevant to Adams's claims concerning the current version. So the court will not impose any simple temporal restriction on discovery. But the court will not require defendants to retrieve years-old records that are not reasonably available to them.

In summary, the court rules as follows:

**Discovery Motion 1.** Adams's motion to compel, Dkt. 28, is denied for the most part. It appears that defendants have provided most of the written discovery to which Adams is entitled. The court will give defendants seven days to provide to Adams any outstanding written discovery that is consistent with this order.

**Discovery Motion 2.** Defendants' motion concerning legislative privilege (brief in support at Dkt. 34) is denied as moot. The court grants relief to defendants on the basis of relevance and proportionality, not on the basis of legislative privilege.

**Discovery Motion 3.** Defendants' motion for protective order, Dkt. 41, is granted for the most part. Defendants are granted the specific items of relief numbered 2 through 5 in Dkt. 41.

One further clarification: Adams seeks information about the city's "cooperative plans" with surrounding communities, including the justifications for the plans and "all communications, facts and data" related to the plans. Dkt. 42-1, at 6. Some of this information is likely publicly available. But Adams has not explained how the cooperative plans, let alone communications, facts, and data related to the plans, are relevant to its claims. It argues only

that the plans "are specifically referenced" in its amended complaint. Dkt. 46, at 18. The amended complaint merely states that the plans "impose the city's existing billboard restrictions and prohibitions on those areas that will eventually become city property." Dkt. 17, ¶ 36. Because Adams has not explained how the information it seeks about the cooperative plans is relevant, the court will not allow it to inquire about that information during depositions.

**Discovery Motion 4.** Defendants' motion to quash the deposition of Mayor Soglin, Dkt. 50, is granted. In light of the court's rulings in the order, the deposition of Mayor Soglin would be cumulative if it were at all relevant, and it is not proportional to the needs of the case. Although Adams has not yet responded to this motion, the court's analysis of the other motions foreordains the result, and by making the decision now it will save Adams the expense of responding.

The court concludes that these discovery motions were prompted primarily by Adams's unreasonable and unduly burdensome discovery requests, and thus the court will award defendants their reasonable actual attorney fees in making or responding to Discovery Motions 1, 3, and 4. The parties are encouraged to reach agreement on the amount of fees. In the absence of agreement, defendants should submit a properly supported itemization of their fees.

ORDER

IT IS ORDERED that:

1. Plaintiff Adams Outdoor Advertising Limited Partnership's motion for leave to file a sur-reply, Dkt. 49, is GRANTED.

2. Plaintiff's motion to compel defendants' discovery responses, Dkt. 28, is DENIED for the most part, consistent with the opinion above.

11

3. By July 10, 2018, defendants must provide to plaintiff all remaining discovery consistent with the court's order.

4. Defendants' motion for protective order based on legislative privilege, Dkt. 34, is DENIED.

5. Defendants' motion for protective order, Dkt. 41, is GRANTED for the most part, consistent with the opinion above.

6. Defendants' motion for protective order relating to the Soglin deposition, Dkt. 50, is GRANTED.

7. Defendants are awarded their reasonable actual attorney fees in making or responding to Discovery Motions 1, 3, and 4.

Entered July 3, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge